FILED
2007 Feb-06 PM 01:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF ALABAMA
                      SOUTHERN DIVISION

ROBERTA GODFREY,                }
                                }
     Plaintiff,                 }
                                }    CIVIL ACTION NO.
v.                              }    05-AR-2259-S
                                }
PRISON HEALTH SERVICES, INC.,   }
                                }
     Defendant.                 }
```

**MEMORANDUM OPINION**

Before the court is the motion of defendant, Prison Health Services, Inc. ("PHS"), for summary judgment on the above-entitled action brought by plaintiff, Roberta Godfrey ("Godfrey"). Godfrey, in an inartful complaint, brings claims for race discrimination and for retaliation under Title VII of the Civil Rights Act of 1964 and under 42 U.S.C. §1981. For the reasons that follow, the court will grant PHS's motion.

### I. Facts[1]

PHS is a private corporation which provides medical and dental services to inmates at thirteen correctional facilities throughout Alabama. Godfrey, a white female, began working for PHS at the Donaldson Correctional Facility ("Donaldson") as a licensed practical nurse ("LPN") in November 2003. Before that, Godfrey

---

[1] Some of the facts pertaining to PHS's motion are in dispute. For purposes of this opinion, the court will consider these facts in the light most favorable to Godfrey, the non-moving party.

1

worked as a LPN at Donaldson for NaphCare Inc., the corporation which provided medical services at Donaldson before PHS. When PHS took over the Donaldson contract, Godfrey switched employers in order to remain at that facility.

In April 2004, PHS hired Stephanie Lawson ("Lawson"), a black female, as the Unit Health Services Administrator ("HSA") for the Donaldson facility. As HSA, Lawson had administrative responsibility for all PHS employees at the Donaldson facility. Lawson had at least some authority to hire and fire PHS employees. Her immediate supervisor was Wendy Smith ("Smith"), the Regional Health Services Administrator. After a short but controversial tenure, Lawson was fired by PHS in March 2005.

According to Godfrey's hearsay, sometime in April 2004, Lawson told Dr. Clyde Varner ("Varner"), a black physician employed by PHS at Donaldson, that "she was going to get rid of all of them and bring in our people." Godfrey interpreted what she heard from a third party to mean that Lawson intended to fire white employees and, in their places, hire blacks. Godfrey admits that she did not hear the conversation between Varner and Lawson when the allegedly offending statement was made. However, she confronted Varner after what she was told and asked him what he planned to do about Lawson's comments. In response, Varner showed Godfrey a letter he had drafted addressing the behavior of Lawson and Smith. This may or may not constitute an admission that the comment was made by

Lawson.  Although Godfrey does not know to whom the letter was addressed, she claims that Varner faxed the letter to someone in PHS.  Varner's supervisor, Dr. Willard Mosier ("Mosier"), the Regional Medical Director, testified that he never received Varner's letter and that if Varner had a complaint, he should have used the PHS reporting hotline or reported the incident to Mosier or Laura Ferrell ("Ferrell"), the Regional Vice President.

In May 2004, Godfrey overheard a conversation between Lawson and Smith during which one of them said that "it was too bright in there and that they needed to add some color."  Pl.'s Dep. 76:1-77:9.  Godfrey interpreted this statement to mean that Lawson and Smith felt there were too many white nurses working at Donaldson.

On June 1, 2004, Ferrell called a staff meeting for all PHS Donaldson employees.  According to Mosier, the purpose of the meeting was to reconcile the differences between feuding staff members and to exhort the employees to work together as a team. During the meeting, Godfrey said that "[she thought] this meeting is ridiculous because it is not going to get us anywhere anyway because Stephanie Lawson has already made the comment to . . . Varner . . . ."  Pl. Dep. 115:20-116:2.  This was the first and only effort Godfrey made to report any alleged instance of discrimination.  The next morning, Godfrey resigned her position without giving notice.  After the meeting, and before her resignation, Godfrey was not in contact with any other PHS

3

employee.

During her tenure with PHS, Godfrey was disciplined on a single occasion. On May 27, 2004, Godfrey received a written warning for her alleged use of profanity in the halls. Godfrey claims that it was another nurse standing with her who used the questionable language. Seconds after the offending utterance, Godfrey was called into Smith's office and asked if it was she who had spoken. Godfrey denied Smith's charge. Smith then asked the same question of the other nurse, who admitted to making the statement. At this point, either Smith or Lawson handed Godfrey a written warning for her language. It is undisputed that the warning carried with it no further penalties.

## II. Summary Judgment Standard

In considering a Rule 56 motion, the court must construe the evidence and make factual inferences in the light most favorable to the nonmoving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). The court can enter summary judgment only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The court does not "weigh the evidence and determine the truth of the matter," but solely "determine[s] whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 242-43 (1986) (citations omitted).

### III. Analysis

#### A. Race Discrimination

Invoking Title VII and §1981, Godfrey contends that PHS discriminated against her because she is white.  In order to demonstrate that she was the target of illegal racial discrimination, Godfrey must first make out a *prima facie* case of discriminatory intent by a decision-maker who took or caused adverse employment actions against her.  *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003).  Godfrey may establish a *prima facie* case in either of two ways: (1) by providing direct evidence of discriminatory intent in the form of remarks or statements made by PHS or one of its supervising agents; and/or (2) by relying on circumstantial evidence of discrimination.  *Hill v. Metro. Atlanta Rapid Trans. Auth.*, 841 F.2d 1533 (11th Cir. 1988).  Godfrey attempts to establish a *prima facie* case in both ways.

    *i) Direct Evidence*

Godfrey argues that Lawson's statement to Varner constitutes direct evidence of discriminatory intent.  In response, PHS argues first, that Lawson's statement, if it occured, does not constitute direct evidence, and second, that Lawson's statement is inadmissible hearsay under Fed. R. Evid. 801.  Because the court agrees with PHS that this is not a direct evidence case, the question of admissibility need not be reached.

5

Direct evidence is "evidence which, if believed, proves the existence of the fact in issue **without inference or presumption**." *Taylor v. Runyon*, 175 F.3d 861, 867 (11th Cir. 1989) (emphasis added). "Evidence that only suggests discrimination, or that is subject to more than one interpretation, does not constitute direct evidence." *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir. 1997). Furthermore, "only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of [race] . . . constitute direct evidence of discrimination." *Carter v. City of Miami*, 870 F.2d 568 (11th Cir. 1989).

If Godfrey had alleged that Lawson said she was going to get rid of all the "white" employees and hire "blacks" in their stead, and had the authority to do it, Godfrey might be able to set forth a direct evidence case. In this hypothetical, no inference or interpretation would be needed to recognize the discriminatory intent of a decision-maker. However, Lawson's statement is not nearly so unambiguous. As it stands, a jury could only **infer** that Lawson meant "whites" when she said "them," and "blacks" when she said "our people." Lawson's second statement, about things being "too bright in here," is also not an unambiguously discriminatory statement. Where inferential leaps are required to discern discriminatory intent, there is no direct evidence of discrimination.

   *ii) Circumstantial Evidence*

6

Even though Godfrey cannot point to any direct evidence, she can still establish a *prima facie* case if there is circumstantial evidence of discrimination against whites, including Godfrey. In circumstantial evidence cases, the sufficiency of a plaintiff's evidence is evaluated using the familiar burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973), and *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 101 S. Ct. 1089 (1981). Under *McDonnell Douglas*, Godfrey must show: (1) she belongs to a protected class; (2) she was subject to an adverse employment action; (3) her employer treated similarly situated employees outside her class more favorably; and (4) she was qualified for her position. *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999) (citations omitted). PHS concedes, for purposes of this motion, that Godfrey meets elements (1) and (4). Therefore, in order to succeed on its motion for summary judgment, PHS must establish that there are no genuine issues of material fact in dispute with respect to the second or third elements of Godfrey's *prima facie* case.

PHS contends that Godfrey offers no evidence to prove that she was subjected to an adverse employment action to which a similarly situated, non-white employee was not subjected. Godfrey argues, apparently, that the written warning she received for her purported use of profanity constituted an adverse action. In this, Godfrey is mistaken. In order to establish the existence of an adverse

employment action, "an employee must show a **serious and material** change in the terms, conditions, or privileges of employment . . . as viewed by a reasonable person in the circumstances." *Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001) (emphasis in original). Godfrey does not contend that she sustained any "material" change, such as the termination of employment, docked pay, or loss of benefits as a result of the written warning she received. Instead, she adds it to the quiver of slings and arrows that she says forced her resignation. Although proof of direct economic consequences is not necessary to prove an adverse employment action, "the asserted impact cannot be speculative and must at least have a tangible adverse effect on the plaintiff's employment record." *Id.* at 1239. Under this standard, it is clear that Godfrey cannot establish that she suffered an adverse employment action based merely on the receipt of the written warning. Therefore, she has no Title VII claims based on the single warning.

### B. Constructive Discharge

Godfrey necessarily contends that a real adverse employment action occurred when she was constructively discharged. She claims that the work environment was "so hostile and retaliatory that she was forced to resign her position on June 2, 2004." Pl.'s Br. at 27. In evaluating her said claim, the court cannot consider her subjective feelings about PHS's treatment of her. Rather, the

8

court must determine whether a reasonable person in Godfrey's position would consider the working conditions to be so intolerable that she was compelled to resign. *Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d 1311, 1317 (11th Cir. 1989).

There is no evidence to support Godfrey's apparent conclusion that a reasonable person would believe the conditions surrounding her employment to be so bad that they forced her to quit, or, in other words, that they amounted to an actual discharge. The only incidents Godfrey cites as evidence of constructive discharge are (1) Lawson's comments, and (2) the written reprimand. Neither of the incidents, nor both incidents in the aggregate, even arguably rise to the level of an environment so intolerable that an employee could not be expected to tolerate it. This conclusion obviates any need to discuss whether there was racial animus in the creation of the employment environment of which Godfrey complains.

**C. Retaliation**

Finally, Godfrey claims that PHS retaliated against her for engaging in statutorily protected activity. In order to establish a *prima facie* case of retaliation under either Title VII or §1981 (assuming that §1981 provides a vehicle for a claim of retaliation), Godfrey must prove that: (1) she participated in an activity protected by Title VII; (2) she suffered an adverse employment action; and (3) there is a causal connection between the participation in the protected activity and the adverse employment

action.  *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 586 (11th Cir. 2000).

Godfrey fails to present even a shred of evidence to establish any of these elements of a *prima facie* retaliation case.  First, the only activity she claims to have engaged in is being "named as a witness in a grievance filed by her niece against Lawson."  Pl.'s Br. at 23.  Apparently, Godfrey's niece, Paula Pate ("Pate"), also a PHS employee, complained that Lawson had "cursed at [Pate]."  *Id.*  In response, Pate filed a complaint against Lawson, naming Godfrey as a potential witness.  Godfrey's status as a potential witness does not constitute participation in an activity protected under Title VII.  It therefore cannot satisfy the first element of a *prima facie* retaliation case.  Moreover, Godfrey acknowledges that after witnessing Pate being disciplined, she decided not to call PHS's compliance complaint hotline.  In other words, Godfrey engaged in no conduct related to the Pate incident protected by Title VII.

Godfrey is also unable to show that she suffered an adverse action in retaliation for her conduct.  As discussed above, receiving a written warning to which no further consequences attached does not constitute an adverse employment action.  The constructive discharge as an alleged adverse employment action has already been disposed of.  It was not an adverse action and could not have been motivated by racial animus or by retaliation.

10

Further, Godfrey could not manufacture a causal connection by quitting.

Because Godfrey utterly fails to establish a *prima facie* case of retaliation, PHS is entitled to summary judgment on this claim.

### IV. Conclusion

For the foregoing reasons, PHS's motion for summary judgment will be granted by a separate order.

DONE this 6th day of February, 2007.

                                                   */s/ William M. Acker, Jr.*
                                                   WILLIAM M. ACKER, JR.
                                                   UNITED STATES DISTRICT JUDGE